We'll hear Texas Farmers v. Lexington Good morning, Your Honors. Robert Olson on behalf of Texas Farmers. May it please the Court. I'm going to try and manage the clock here a little. We'll see about my career as future NFL coach. Well, Mr. Olson, let me give you what's on my mind since Judge Kleinfeld started that, starts that way as well. It seems to me that this case turns on whether or not the claims relate back to the diabetes treatment in 1990. And as I understand the interrelated acts language, if that's the case, then isn't that the triggering date for coverage under the policy? And why isn't Texas Farmers on the hook for malpractice that occurred prior to, what was it, 2001? The problem is the use of the word claims. We're not talking about a duty to defend here. We're talking about a duty to indemnify. Duty to defend depends upon what the claims are, what the potential is. I understand we have two claims. One is for negligent eye surgery and one is for negligent diabetes treatment. The eye surgery occurred in 2001. The diabetes treatment occurred beginning in 1990. Correct. Aren't those two separate claims? I think they could be two separate claims, but the key here is claims. Why? It's an occurrence policy. It's an occurrence policy, but for settlement, when a carrier settles a case... Right, but when a carrier settles a case, a carrier is not on the hook for anything that was claimed, anything that was potential. The carrier is only liable based on what the actual facts are. But I thought she'd amended her complaint. Certainly she amended her complaint, but there's no evidence here and no finding of what the real facts are. But that's because there was a settlement. There was never a trial. Absolutely, and you move for summary judgment, saying there are no contested issues of material fact, and we're not appealing the denial of that. Okay. So there you have it. So now we look at the record and we say, did she have two claims? I'm having a hard time seeing why there's only one claim. Let me ask you this. If the kidney treatment is a separate claim, when did it accrue? We don't know. It's an occurrence policy, so if it's a separate treatment, it accrues when the injury takes place. There's nothing in this record when injury resulted from the kidney treatment. What was the injury? Not clear. Her allegations aren't clear. She claims that it contributed to the blindness resulting from the surgery. But she also is complaining about nephropathy, right? Yes. Meaning permanent kidney damage, correct? Yes, and when that occurred, we don't know. Actually, it's not clear when there's a negligent act, is there? It is not clear when there's a negligent act, and the key word there is negligent. She alleges lots of acts. There's no evidence that anything was negligent. But when there's a settlement, there is ultimately an agreement not to contest all of those things, right? Well, actually, the settlement agreement says, and this is at 437, like most settlement agreements, that ER 437, I think it's page 3 of the settlement agreement. It says that, like most settlement agreements, that liability is denied. We deny that there's any liability. So the settlement agreement doesn't establish that there is any fact of liability. Where I think the key legal point is that what is the effect of a settlement on a carrier's obligation to pay indemnity? And that's what the Safeco case, Safeco v. Superior Court case, says. It's what the actual underlying facts are. It's not what was alleged. Let's look at the underlying facts to the limited extent that the record establishes them. You have two diseases which are both common sequelae of diabetes, kidney damage or destruction, and blindness. In this case, the blindness resulted from complications from surgery. Oh, there are all sorts of things that diabetics get, amputated limbs because they didn't notice wounds on their feet. And what you've got here is a policy that says, interrelated wrongful acts shall be deemed to have happened at the time of the first wrongful act within those interrelated acts. That's the policy language. Now, here, the allegation is bad diabetes treatment with a sub-allegation, at least that's what it looks like, of bad surgical treatment. And the policy says that the interrelated wrongful acts are those that are logically or causally connected and have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, and it goes on from there. So I have trouble seeing where there isn't an interrelated wrongful act circumstance because it's all diabetes treatment and why it doesn't, therefore, date from the first wrongful act because of the policy language saying, shall be deemed to have happened at the time of the first wrongful act. That's a very reasonable argument for duty to defend. What you've started with is these are the facts. Well, even with duty to indemnify, it applies, correct? It may apply to the duty to indemnify when we know what the actual facts are. I guess that begs the question. What is the first wrongful act with respect to the kidney treatments? We don't know because we have no record of what the actual facts in this case are. Is there an allegation in the complaint? Absolutely there's an allegation in the complaint, but the allegations of the complaint do not control the carer's indemnity obligation in the settlement. What does the complaint, the amended complaint, that adds the negligent kidney treatment provision say as to when the first wrongful act occurred? Because the treatment was over a decade, right? It says 1998. It says 95 or 98. Were you on the rest in 98? No, we were not. But this is – Wait a minute. There's some evidence in the record that both her problems, the kidneys and the eyes, stem from her diabetes treatment. And as far as I can tell, that's the only evidence there is. And there's no evidence in the record to the contrary. There's no evidence of what her actual injuries were or what caused them. The only evidence is we have defense counsel's summary of what he thinks the likelihood of liability is. There is no evidence, and certainly no undisputed evidence, of what the actual liability here was. Mr. Olson, the settlement agreement, I assume, also contains a release of liabilities and claims, correct? Absolutely. So you want the protection under the settlement agreement of not having to re-litigate the issue of whether or not there were negligent acts? Vis-à-vis the plaintiff. Right. But not vis-à-vis the insured. I'm not sure we can parse it quite that way. In essence, you're asking us to rule that you can have it both ways. The California Supreme Court parses it that way. Johansson is the fundamental case in California. Johansson says if a carrier has reserved its rights and it thinks it has a coverage issue, it nonetheless has to accept a reasonable settlement offer. I think you're right in your distinction between the duty to defend and the duty to cover. And I think you're right that the true facts, rather than the averments, control the duty to cover. My problem is I don't see any evidence of true facts showing that under this policy language I read to you, everything doesn't relate back. Absolutely correct, Your Honor. This is summary judgment. This is not our summary judgment. This is Lexington's summary judgment. It's their obligation to put in the evidence of the true facts. Otherwise, he'd be speaking first, right? Excuse me? Otherwise, he'd be speaking first, right? Absolutely. So how do we end up with this? Let's say we find that there's a fact issue and it goes back and there's a determination that the first negligent act in treating this woman for kidney problems occurred prior to the time you were on the risk. Who pays? I think we would probably pay because we made a deal with the insured that we were going to protect the insured in this case and the issue is between the two carriers. Well, certainly there's no evidence that the negligent act occurred after your million-dollar policy kicked in. Is there? Oh, absolutely. The eye surgeries are after the million-dollar policy. Sure, but are you saying that there might be some evidence that the negligent kidney treatment post-dated the eye surgery? And there may well be evidence, and we believe, the defense counsel believes, that the evidence is that the kidney treatment wasn't negligent at all. Well, there's no way to sort out the settlement because it isn't sorted out. It's not allocated. And that is what the follow-on litigation is for. The kidney treatment and the eyes have, in fact, been settled. And the kidney treatment predates. Now, as far as the burdens go, as I recall, Matsushita, Selatex, and Anderson, the burden on summary judgment is whoever has the burden at trial. No. To the extent it's no longer on the movement. All the movement has to do is point. Now, I don't see any evidence from you that the true facts are that everything falls into the period when your policy dropped. The movement has to do more than point. The movement can't just say it's not my burden. It can. That's what the cases say. Oh, the movement has to show that there is at least some evidence that shows that the responding party cannot meet their burden. You don't have to disprove their case. It's the old law before the trilogy, but the Supreme Court then said all he has to do is point and say you have the burden. Do you have any evidence? Even if that's the case, it is their burden on summary judgment and their burden even without summary judgment to establish that this falls within our policy period. So is it your position that there is no evidence as to when the onset date was for the – or, excuse me, that was the last case – where the date of loss was for the negligent kidney treatment, and so the only evidence is the eye surgery? That is correct. That is correct. And the evidence there is is the evaluation of the defense counsel, which is undisputed, and that evaluation is that the liability lies on the eye surgery and not on the kidney treatment. You know, when I was looking at the way the underlying claim was litigated, it seemed to me that the kidney problems were sort of an also-ran and were added afterward in order to expand the scope. And then when the case was settled, the idea was, well, we're not so sure whether there's a claim here or not, but if there is, we want to release it away. Absolutely. Belt and suspenders. But for indemnity purposes, the question is, what is – what are the – you have to prove the case within the case, as it were. I want to make one quick comment on another aspect of the case. If we're right on what the standard for determining indemnity on settlement is, the case is reversed because the trial court looked just at the allegations, just what the claim was, not at what the underlying facts were. If we're not right on that, then you go to the question of how do you determine whether there's concurrent coverage or successive coverage between these two policies. And my one big point there is just that – Well, you didn't argue that, did you, below? Yes, we did. Yes, it was argued below. Oh, absolutely. And the trial court decided it in its decision. It said, I only have to find out what the Texas farmers' coverage was. I don't have to look – if Texas farmers' applies, I'll find – Well, I thought you were going to the equitable contribution. No, I'm doing excess primary. That you didn't argue below, correct? No, we argued equitable contribution below, and the district court specifically said, I don't reach that because I don't have to. It's in the district court opinion. What I wanted to say on the concurrent versus successive coverage is, the key is not labels that are given to various policies. It's what the actual policy language says. And you can't substitute labels for analysis. You have to look at the actual policy language here. And Ordway's policy is very clear that it attaches – Part A attaches above a million dollars. Part B says – and any other underlying insurance, underlying – They're just a reinsurer. Lexington's a reinsurer. They stand in Ordway's shoes. Excess insurer and reinsurer are two different things. Absolutely. They are here in Ordway's shoes. Well, they're picking up the first $4 million of that $2 million policy, right? That's correct. But their policy doesn't matter. That's between them and Ordway. Between us and them, what matters is what the Ordway policy is. I'm going to try to keep a couple of seconds for a two-minute drive. Well, if it's two minutes, your NFL career is in a flash. Counsel. May it please the Court. Richard Dorn on behalf of Lexington. And if I may, I'll take the issues as I think I heard them. First of all, the question of whether or not there is an issue as to whether there was a duty to indemnify under the Texas Farmers Policy. First of all, this argument is directly contradicted by the specific terms of Texas Farmers Policy. I appreciate you're going to get to that, and we need it, but could you talk about the facts for a minute? It's odd having this sort of case and not looking at a bunch of medical evidence and seeing some facts. Certainly, Your Honor. What facts are there in the record to show when each thing started and what the relationship is of the eyes to the kidney treatment that caused the diabetes treatment that caused the kidney problem? And first, Your Honor, when we come back to it, I'll explain that under Texas Farmers' unique policy language, whether or not there is an actual injury underlying the settlement is, in fact, irrelevant to coverage under the way Texas Farmers worded its policy. Which part of the policy? The policy provides coverage for all damages which the insured shall become legally obligated to pay because of a claim alleging injury caused by a wrongful act. Okay, so that's the endorsement. Yeah, that covers the claims made policy. Section B1 of the policy, Your Honor, and that is setting out the coverage provided. And then damages is separately defined as monetary amounts or sums due or paid pursuant to settlement, judgment, or award. So Texas Farmers, on the face of its policy, specifically agreed to provide coverage for settlements of claims alleging injury as a result of wrongful acts. That's the duty to indemnify within the terms of the Texas Farmers policy. That occur when the policy is in effect. The wrongful acts that occur when the policy is in effect. That's correct, Your Honor. And we know that the alleged wrongful acts, and wrongful acts are defined to include acts of negligence, are alleged to have occurred, as counsel stated, from before 1999 through 1999, 2000. That's what I'm asking you. Your opponent is saying there are no facts either way and you have the burden of proof. Your Honor, first of all, we agree with the court that the burden is on Texas Farmers. However, footnote 12 in Lexington's brief sets out a detailed description of the allegations and the evidence that were part of the mediation that show that the underlying claimant was urinating high levels of protein, which were already indicative of permanent kidney damage. Wait, counsel, I've got the excerpts of record here. I'd kind of like to put a blue sticky on the evidence. Absolutely, Your Honor. Tell me what happened somewhere else in some other proceeding. The blue stickies belong at the supplemental excerpts of records at page 66 to 67. Those are the references in footnote 12 you're talking about? Yes. Also the supplemental excerpts of records of 103 and 109 to 13 and 114 to 21. The records replete with facts that show that there were injuries to the underlying claimant as early as 1999 and certainly alleged injuries occurring during that policy period. And the court has also- As a result of a negligent act? As a result of negligent treatment of her diabetes by Kaiser. 66 isn't helping me much because all it is is her unsworn statement. 103, let's see, 103 I think is also legal stuff. It's just a letter from a lawyer. Your Honor, these are, I believe, mediation statements that were offered. I'm looking for something cognizable under Rule 56C. Your Honor- I don't care what's cognizable for the mediator. Your Honor, under the allegations in the- it's undisputed, as we've heard from counsel, that the allegations in the claim are that there were years and years of negligent treatment of the diabetes. I just saw the first thing that Rule 56C allows me to consider, and that's at 114, because it's a deposition excerpt. Thank you, Your Honor. Now where should I look in the deposition excerpt? Your Honor, that provision discusses the problems of the underlying claimant's kidney. It's got four pages per page of the excerpt. Just see where you've got your blue highlighter there and point me to it. Give me one moment. I'm kind of hungry for evidence here. Understood, Your Honor. Recognizing that the Texas Farmers Policy provides its coverage based on allegations rather than evidence. It's a little more complicated than that, but go ahead and show me the evidence. Not on the face of the coverage. I'm not conceding anything by showing me evidence. Understood. I'm not conceding you need evidence, but I'd still like to see it. All right. At page 65, we're talking about looking at medical records, volumes of medical records, and being critical of nurses. Both these nurses are clear. You're obviously critical of these nurses on knowledge deficit, and right now you're not able to point me to any specific incidents. Then they go on to talk about different medications being presented and ultimately a referral to a nephrologist. We are at page 80, you see. Let me put an objection here. We're having him confine his opinions to the years 2000 to 2006, and we're focusing on the years 2000, 2001, and 2002. Okay. Given the limitations, you have concluded that Dr. Nestor was not qualified, knowledgeable enough to manage Ms. Kapuka's case. Correct. And that's from 2000, 2001, 2002, that the treating physician was not knowledgeable enough to take care of the underlying claimants. And on the next paragraph, you say that had Ms. Kapuka been referred to a nephrologist, she would have been placed on angiotensin receptive blockers plus ACE inhibitors. Correct? Yes. Is it your opinion that the combination of those medications was a standard of care in the years prior to 2000? Hold on. I missed what you just said. Page 80, lines 14 through 18. Okay. I've got that. Thanks. And then to go on, Your Honor, to page 92, I want to clarify because I couldn't tell from the disclosure whether it would be your testimony whether a renal biopsy is always indicated in every patient regardless of individual factors. The answer there was no. But the substance of this testimony is that as of 2000, her treating physician was incompetent to provide care for diabetes. And that's the thrust of the claim, and that's the thrust of the injuries alleged in the supplemental record sites that I have provided the court. And there is no dispute, by the way, Your Honor, it's undisputed fact, number nine, at page 173 of the record, that the claims taken in their totality are interrelated wrongful acts within the terms of the Texas Farmer's Insurance Policy. I think we're past that part. Now you wanted to talk about the policy language some, but you may have already covered it. I may have, Your Honor. So let me be brief just to be sure I've been clear. As we've said, the policy provides coverage for all damages, which the insured shall become legally obligated to pay because of a claim alleging injury, whether or not there is actually injury. That's a Texas Farmer's Insurance Policy provision that separates it from all the various case law addressing standard sentences. It doesn't separate it. It's standard. What ties it to true facts is legally obligated to pay. Your Honor, legally obligated to pay damages, and damages include amounts paid in settlement based on allegations. This is a different policy. It's not standard. If the court then looks at the case law cited by plaintiffs, it will find two things. First of all, none of that case law addresses the policy language that is in the Texas Farmer's Policy. And second of all, none of those cases require a trial of the underlying liability of the insured. Basically what the plaintiffs want here, what Texas Farmers wants, is an advisory trial. Could you tell us, the circumstances are frankly a little unusual, and authority is a little scarce on these problems of arguably two events and arguably better coverage for one than another. Could you tell us what your best authority is, what case we should cite and follow? Well, Your Honor, our best authority is the policy itself, and the fact that I asked you for a case because I already know about the policy itself. But, Your Honor, each case that's cited regarding, for example, exhaustion of underlying policies Counsel, let me make clear my question. Yes. Previously I was struggling to get some evidence, and now I'm struggling to get a precedent that can be cited in a disposition. And that's really what I want. I already know about the policy. I'd like a citation, and I'd like the citation to be a case that's sort of analogous, where there are two or more claims, and they're settled, they don't go to trial, and there's a dispute about which policy covers. Well, Your Honor, the Safeco case the plaintiffs rely upon states very specifically that a settlement is a presumption of the liability of the underlying insured, and that a non-participating carrier retains its right to raise coverage objections to that settlement. So that's the one? That case gets us there, Your Honor. There are various authorities that stand for the proposition that you do not try the liability of the underlying insured, but rather you look to see whether or not there are coverage defenses that apply to the policy. I guess you've conceded you're saying there's a precedent for my mode of analysis. There is no precedent that I can cite for an analogous fact situation where the party on my side wins. Your Honor, what we have here is a Deamer Clause in the policy that specifically by operation of the contract places liability back in the first year. It's by operation of the Texas Farmers Policy itself. Once it's placed in that first year, that policy must be exhausted, and that's by operation of the contract. And Texas Farmers did that for two reasons in establishing its policy. It did it to make sure that only one of its policies would be triggered, where you had years of ongoing interrelated wrongful acts, and these are stipulated to be interrelated wrongful acts. They're deemed to have occurred in year one, so they only have one policy-limited issue. It just happens to be the $5 million policy that they didn't wish were at issue. Secondly- I have a question for you. You're tying your argument to the grant of coverage in Section B-1 of the policy. Wasn't that superseded by an endorsement? On Section B-1, there were modifications to various provisions in the policy, Your Honor, but that language continues to state the scope of coverage. What was changed in the policy by endorsement was that it went from acquiring the claims to be made during the policy period to saying that this policy will be provided whenever those-so long as those events occur during the policy period and the date of notice is irrelevant. So we're back to determining when an occurrence happened, right? We are back to-first of all, if the court desires to find an occurrence and evidence of an occurrence for purposes of supporting the settlement date- Right. Not the settlement date, but the trigger of coverage date. Plaintiffs in their appellant brief argued that there had to be a manifest injury at the time that their policy was in effect. We came back and we pointed out two things. First of all-actually, three things. First of all, that under the express wording of the TFI policy, an allegation of a wrongful act will be covered under that policy. So a wrongful act, which is an act of negligence, separate and apart from occurrence coverage per se, will also trigger coverage under that first policy. Regardless of when the injury manifests. Regardless of when the injury manifests. Second of all, we argued that the trigger is not manifest injury, it's injury in fact. In other words, injury in fact that may not even be detectable yet, but that has occurred even on a molecular level. And third, were you to get to an occurrence, if you needed to get to an occurrence, and we suggest you don't because you have wrongful acts during that policy period. And third, as set out in footnote 12 and the various supplemental excerpts of record I've cited, there was in fact injury in fact and indeed evidence of manifest injury during that period. And so a decision was made by Texas farmers to settle that case. And when they say there is no risk of loss on that earlier claim, they basically reverse engineering the facts. Their defense counsel told them they had a 30% risk of losing that claim. A 70% chance of losing the eye surgery claim. Basically what they're saying to you is they would have been willing to try a 30% chance of losing. They weren't willing to try a 70% chance of losing. And that's all very well and good to say now that we're sitting here on the other side of the settlement. What if there had been an advisory settlement? Or an advisory trial? Whatever that would have looked like. And there's no case in the record that shows that you have to try the insured's underlying liability to determine responsibility for a settlement. None. It's not in Johansson. It's not in Safeco. It's in none of those cases. In Johansson you'll see the issue was simply whether there was a coverage dispute and whether it was a covered claim. It makes no reference to there needing to be a find of liability on the part of the insured before there would be coverage. But what if we had that advisory trial? And what if the result of that trial was that... Wind it up. I am winding up, Your Honor. Thank you. And what if the result of that trial was that not only did they prevail on that 30% chance of losing, but they also prevailed on the 70% chance of losing? In other words, had the case gone to trial, Kaiser would have won and walked away. What would the coverage implications of that be? Texas Farmers hasn't addressed that. It doesn't matter. It doesn't matter. That's right. It doesn't matter because there's the eye surgery and that's a given and nobody's contesting that. The question is whether the policy language, the multiple claim policy language, is implicated by a wrongful act that occurred. And when did it occur? Did it occur during the period of coverage for the million-dollar policy or the five-million-dollar policy? But the eye surgery claim was settled, and according to plaintiff's argument, if Kaiser hadn't been liable for that, they would have had no duty to indemnify, so they have a right to find out whether Kaiser actually did anything wrong. The point here is, Your Honor, under the terms of the policy and under the terms of the settlement agreement, which do, in fact, include every element of any claim related to treatment for this person's diabetes or her eye conditions, that this falls squarely under the Texas Farmers policy, it must be deemed to have occurred in 1999, and as a result, no event in 2001 eroded the underlying coverage, and without erosion of the underlying coverage, you cannot, as a matter of law, penetrate the excess layer. Okay. I understand very much. Thank you. Did you have another question? No, I didn't. I'm all set. I'll see if I can be John Otway. As far as their policy language, of course, they only read part of that policy language. If you look at the subsequent paragraph, it says, if the claim is first made within the policy period, you're absolutely correct, Judge Lawson. The occurrence language completely obliterates that. You mean the endorsement? The endorsement, yes. The reference to undisputed fact number nine, yes, we admit that the claims included, that is what the allegations were. If you look at the next undisputed fact, which is number ten, it asks, it says that the facts underlying those claims were inherent in the settlement, and that's disputed. It's the difference between the allegation and what the underlying fact is. As far as their factual reference, what they cited to in the excerpt of record is not something that was set out in their undisputed facts, because that wasn't their theory in the trial court, and indeed, I submit, is not admissible under Rule 56, because I believe that wasn't a deposition in this case. I believe it was a deposition in the underlying case. And so it's not, without having been authenticated, not admissible here. Why isn't it? Rule 56C says affidavits, depositions are admissible. In the present case. I don't remember having the language in this case. You can't take judicial notice of a deposition. Why would we have to take judicial notice? It's in the record. It's in the record, but it's not admissible evidence in that record. Can you give me the words of Rule 56C that say you can't use a sworn statement or deposition if it was generated in a different case or where it says it is? Certainly not if you were not a party to that deposition. Well, you're not a party to an affidavit either. You're not a party to an affidavit, but you weren't a party to that deposition. The point is that it's under oath, right? We'll look at 56. The question was what case to look at. He's absolutely right. The case is Safeco v. Superior Court. It's 140, the 140 Calab case. It says what matters is the actual facts, and it affirms the denial of a summary judgment saying that the parties have to go and try what the underlying facts were, and it is a parallel situation. The issue was a dispute between carriers about what the policy period was. The Peter Culley case. Excuse me. Is that Safeco v. Fireman's Fund? No, it's Safeco v. Superior Court. Got it. The Peter Culley case also says what has to happen is a liability determination. Thank you, counsel. Thank you, Your Honor. Texas Farmers v. Lexington is submitted. Supamar v. Direct Focus is submitted. We'll hear. Okay, we'll proceed with Clarendon v. State Farm.
judges: Lawson, Kleinfeld, Tallman